```
        UNITED STATES DISTRICT COURT FOR THE
           SOUTHERN DISTRICT OF WEST VIRGINIA
                 BECKLEY GRAND JURY 2021
                 AUGUST 1, 2023 SESSION
```



UNITED STATES OF AMERICA

v.  CRIMINAL NO. 5:23-cr-00125

 18 U.S.C. § 1347

GARY SAWYERS

# I N D I C T M E N T

The Grand Jury Charges:

At all times relevant to this Indictment:

## INTRODUCTION

1. From no later than approximately March 26, 2007, through at least July 11, 2022, within the Southern District of West Virginia and elsewhere, GARY SAWYERS knowingly devised and intended to devise a scheme and artifice to defraud the Veterans Health Administration and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of the Veterans Health Administration by falsely representing to Veterans Affairs and Veterans Benefits Administration representatives that he was wounded by enemy fire in combat when, in fact, his injuries were

self-inflicted due to negligent modifications made to his service weapon.

## THE PROGRAMS

2.  The U.S. Department of Veterans Affairs ("VA") provided benefits relating to healthcare and disabilities to eligible U.S. military veterans and their dependents. More specifically, the VA provided healthcare services, benefits, and items through its Veterans Health Administration ("VHA"). The VA provided compensation and other benefits through its Veterans Benefits Administration ("VBA"), which included the Veterans Affairs Disability Compensation Program ("VA Disability Program").

3.  The VA Disability Program provided compensation and other benefits to veterans for the effects of their disabilities, diseases or injuries incurred or aggravated during active military service. Such disabilities, diseases or injuries were considered to be service connected. The determination of benefits under the VA Disability Program depended, among other things, on the degree of the disability, disease or injury at issue and the number of eligible dependents.

4.  These VA Disability Program benefits included monthly compensation to the veterans and their dependents, a special monthly compensation above the basic levels of compensation for various types of losses or levels of impairment solely due to

service-connected disabilities, diseases or injuries, compensation for "unemployability," and aid and attendance. More benefits were available the higher the service-connection.

5. The VHA offered healthcare services, benefits and items to veterans and their dependents through a healthcare benefit program within the meaning of Title 18, United States Code, Section 24(b).

6. Basic eligibility for VA healthcare services, benefits and items required active military service and separation from service for reasons other than a dishonorable discharge. A veteran awarded a compensable service connection of at least 10 percent (as determined by the VBA through the VA Disability Program) received enhanced eligibility for VA healthcare services, benefits and items.

7. A veteran with a 50 percent or more compensable service-connected disability received special access to care by being placed in the highest priority for enrollment and services: Priority Group 1. A veteran placed in Priority Group 1 received, among other things, cost-free healthcare and medications and priority in scheduling hospital and outpatient medical appointments, and did not have to make copayments.

8. A veteran with a 100 percent service-connection disability received, in addition to the benefits described in

paragraph six, free dental services, and additional benefits described in paragraph three.

## THE DEFENDANT

9. The defendant, GARY SAWYERS ("SAWYERS"), served in the United States Army from June 19, 1984 to August 9, 1984; from August 14, 2002 to September 30, 2002; and from October 1, 2003 to April 26, 2007.

10. In April of 2004, while stationed at Forward Operating Base Rough Rider ("FOB Rough Rider") in Mandali, Iraq, SAWYERS was part of an Army unit that performed patrols and missions in Iraq.

11. On April 19, 2004, while performing a mission, SAWYERS was riding in the front passenger seat of a High Mobility Multipurpose Wheeled Vehicle ("HMMWV" or "HUMVEE"). As SAWYERS'S HUMVEE exited the gate of FOB Rough Rider, SAWYERS's service rifle began to fire, discharging several rounds. At least three of these rounds struck sawyers in the right leg and foot. SAWYERS was transported to a military hospital in Germany and ultimately Walter Reed National Military Medical Center by April 27, 2004. SAWYERS was never returned to his unit in Iraq.

12. After arriving at Walter Reed Medical Center, SAWYERS stated to multiple medical service providers that he had been wounded by hostile fire, and that he had been shot in the chest by a sniper on April 19, 2004. SAWYERS continued to maintain this

account of events, and on May 3, 2004, SAWYERS was awarded a Purple Heart from the command at Walter Reed Medical Center for the wounds he received on April 19, 2004.

13. SAWYERS was honorably discharged from military service on April 26, 2007. Prior to his honorable discharge, on March 26, 2007, SAWYERS submitted a VA Application for Compensation or Pension. In that application, SAWYERS listed several claimed disabilities, including residual gunshot wounds to his right leg and residual gunshot wounds to his chest while in Iraq. He did not provide a date for these wounds on his application. Based on statements made by SAWYERS in his application regarding his wounds, and specifically that they were received because of hostile actions, he was ultimately deemed qualified for compensation.

14. In making its findings regarding SAWYERS's wounds, the VA in its ratings decision used the Purple Heart award as conclusive evidence that SAWYERS was wounded by hostile actions in combat and thus was eligible for compensation.

15. He currently receives $4,568.57 in compensation and benefits per month from the VA through the VBA.

### THE SCHEME TO DEFRAUD

16. On April 19, 2004, the same date SAWYERS was wounded, an officer was appointed to investigate the self-inflicted shooting of SAWYERS. Upon conclusion of the investigation, it was found

that SAWYERS's service weapon had been modified in a manner to make the firearm have a hair trigger and fire in a fully automatic fashion when it was not supposed to.

17. Based on the modifications made to SAWYERS's firearm, the firearm failed a functions test performed by a school-trained armorer.

18. At the conclusion of the investigation, it was determined that the modifications made to the firearm caused the firearm to malfunction, and that the self-inflicted wounds received by SAWYERS were due to the modifications made to the firearm.

19. SAWYERS knowingly and willfully executed and attempted to execute a scheme to defraud the Veterans Health Administration and the Veterans Benefits Administration and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of the VHA by falsely representing to VA medical staff and VBA representatives that he had been wounded by enemy fire when in fact, he had been wounded by self-inflicted gunshot wounds due to his negligent modification of his service firearm.

20. Had SAWYERS not made false statements about his wounds and stated that they were non-hostile wounds which were self-inflicted, he would not have been eligible to receive the Purple Heart award.

21. SAWYERS Purple Heart award, and ultimately his disability rating and amount of compensation from the VA, were based significantly, if not at times completely, on his false statements about his wounds in Iraq.

22. As a result of these false representations, SAWYERS received VHA healthcare benefits to which he was not entitled.

23. Beginning on a date following April 19, 2004, but no later than March 26, 2007, and continuing through at least April 30, 2022, at or near Beckley, Raleigh County, West Virginia, within the Southern District of West Virginia, and elsewhere, the defendant GARY SAWYERS did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a healthcare benefit program, namely, the Veterans Health Administration, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of the Veterans Health Administration, in connection with the delivery of and payment for healthcare benefits, items, and services.

All in violation of Title 18, United States Code, Section 1347.

## NOTICE OF FORFEITURE

The allegations contained in this indictment are hereby realleged and incorporated by reference for the purpose of giving notice of forfeiture pursuant to 18 U.S.C. § 981, 982 and 28 U.S.C. § 2461(c).

2. Notice is hereby given of 18 U.S.C. §§ 981, 982 and 28 U.S.C. § 2461(c). Under §2461(c), criminal forfeiture is applicable to any offense for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C).

The following property is subject to forfeiture in accordance with Sections 981, 982 and/or 2461(c):

a. all property which constitutes or is derived from proceeds of the violations set forth in this indictment;

b. all property involved in such violations or traceable to property involved in such violations; and

c. if, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been

commingled with other property which cannot be divided without difficulty, all other property of the defendant's to the extent of the value of the property described in (a) and (b).

The following property is subject to forfeiture on one or more grounds stated above: a forfeiture money judgment in the amount of at least $ 195,573.40, such amount constituting the proceeds of the violations set forth in this information.

WILLIAM S. THOMPSON
United States Attorney

By: _____
ANDREW D. ISABELL
Assistant United States Attorney